IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

AMERICAN BANKERS INSURANCE
GROUP, INC.,

                Plaintiff/Petitioner,

v.

RICHARD F. LONG and LILLIE M.
LONG,

              Defendants/Respondents.

C/A No. 3: 04-21790-GRA

ORDER DENYING MOTION
TO COMPEL ARBITRATION

[Written Opinion]

This matter comes before the Court on the motion of Plaintiff American Bankers Insurance Group to compel arbitration of the Defendants' claims pending in the Richland County Court of Common Pleas (*Richard F. Long and Lillie M. Long v. James D. Thaxton, et al.,* 03 CP-40-5859, Richland County Court of Common Pleas). For the reasons stated herein, this Court denies Plaintiff's motion.

1

**FACTUAL BACKGROUND**

The following facts appear from the pleadings and submissions of the parties. On August 19, 2003, Richard and Lillie Long purchased a "Senior Subordinated Term Note" for $75,000 from Thaxton Life Partners, Inc., ("TLP") a company doing business in the non-standard automobile insurance market. The Note promised Mr. and Mrs. Long a return of ten (10%) percent annual interest, compounded quarterly, over a one-year term. The Note contains the stipulation that "This Note is to be governed and construed in accordance with the laws of the State of South Carolina."

To purchase the Note, Mr. and Mrs. Long executed a document entitled "Form of Senior Subordinated Term Note Subscription Agreement," to which Richard Long, Lillie Long, and TLP are the only parties. American Bankers Insurance Group, Inc. ("ABIG"), the Plaintiff herein, is not a party to either the Note or the Subscription Agreement, nor is it mentioned in either document.

The Subscription Agreement contains the following arbitration clause:

> <u>Arbitration</u>.  Subscriber hereby agrees that any dispute, controversy or claim arising out of or in connection with, or relating to, any subscription of the Note, or any breach or alleged breach hereof, including allegations of violations of federal or state securities law, shall, upon the request of any party involved, be submitted to, and settled by, arbitration in Charlotte, North Carolina, or within fifty (50) miles of the City Limits of Charlotte, North Carolina, pursuant to the rules then in effect of the American Arbitration Association (or at any other place or under any other form of arbitration mutually acceptable to the parties so involved).  Any award rendered shall be final and conclusive upon the parties and a judgment thereof may be entered in the highest court of the forum, state or federal,

2

> having jurisdiction.  The expense of the arbitration shall be borne equally by the parties to the arbitration, provided that each party shall pay for and bear the cost of its own experts, evidence and counsel's fees, except that in the discretion of the arbitrator any award may include the cost of a party's counsel if the arbitrator expressly determines that the party against whom such award is entered caused the dispute, controversy or claim to be submitted to arbitration frivolously or as a dilatory tactic.

Shortly after Mr. and Mrs. Long purchased the Note, TLP announced that it was suspending all payments to Note purchasers.  TLP filed for bankruptcy protection in the Middle District of North Carolina on November 20, 2003.

On December 9, 2003, Mr. and Mrs. Long filed a lawsuit, in the Richland County Court of Common Pleas on behalf of themselves and a class similarly situated against ABIG and certain individuals involved with the sale of the Notes.  Mr. and Mrs. Long's complaint makes several allegations against ABIG including: 1) tortuous interference, 2) civil conspiracy, 2) unjust enrichment, 3) joint venture liability, 4) rescission, 5) violations of state securities law, 5) participation or alter ego liability, 6) unfair trade practices, 7) liability for aiding and abetting TLP's fraudulent and illegal activities.  The Complaint does not allege that ABIG was a party to the Note or Subscription Agreement, nor does it seek to hold ABIG directly liable under the terms of the Note.  Rather the nature of the Longs' underlying complaint is that the sale of the notes was made at ABIG's direction, and that the proceeds of the note sales by TLP were improperly diverted to ABIG as 'senior' debt.

ABIG removed the Longs' lawsuit to the Bankruptcy Court for the Middle District

3

of North Carolina. However, the Bankruptcy Court remanded the lawsuit to the Richland County Court of Common Pleas on August 5, 2004. ABIG then commenced the present litigation in this Court, basing its claim to federal jurisdiction upon diversity, moving to enjoin the Longs' state court action and instead have the dispute decided in arbitration.

## ANALYSIS

### I.    *Standard of Review*

The matter currently before the Court is the Plaintiff's Motion to Compel Arbitration. The Longs, both in their Answer to ABIG's petition and in affidavits filed with the Court, have unequivocally denied the existence of any agreement to arbitrate their disputes with ABIG. The nature of this denial is a critical factor in determining the proper standard of review under which the Court must decide the present motion.

"The first principle … is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT & T Techs. v. Communications Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (*quoting* Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). *See also* First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). ("[A]rbitration is simply a matter of contract between the parties; it is a

4

way to resolve those disputes-- but only those disputes--that the parties have agreed
to submit to arbitration."); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir.1997) ("Even
though arbitration has a favored place, there still must be an underlying agreement
between the parties to arbitrate.").

As a result of this 'first principle,' "the first task of a court asked to compel
arbitration of a dispute is to determine whether the parties agreed to arbitrate that
dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614,
626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). *See also*, 9 U.S.C. § 4, which
provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of
> another to arbitrate under a written agreement for arbitration
> may petition any United States district court … for an order
> directing that such arbitration proceed in the manner provided for
> in such agreement…. The court shall hear the parties, and *upon
> being satisfied that the making of the agreement for arbitration*
> or the failure to comply therewith *is not in issue*, the court shall
> make an order directing the parties to proceed to arbitration in
> accordance with the terms of the agreement…. *If the making of
> the arbitration agreement* or the failure, neglect, or refusal to
> perform the same *be in issue, the court shall proceed summarily
> to the trial thereof….* Where such an issue is raised, *the party
> alleged to be in default may*, except in cases of admiralty, on or
> before the return day of the notice of application, *demand a jury
> trial of such issue, and upon such demand the court shall make
> an order referring the issue or issues to a jury in the manner
> provided by the Federal Rules of Civil Procedure …"*

9 U.S.C. § 4 (emphasis added).

This Court's initial inquiry is thus to determine what standard must be applied
when faced with a motion to compel arbitration, where the existence of an agreement

to arbitrate is in issue.  In general, motions to compel arbitration pursuant to 9 U.S.C.

§ 4 "exist in the netherworld between a motion to dismiss and a motion for summary

judgment." Shaffer v. ACS Government Services, Inc., 321 F.Supp.2d 682, 683 -684

(D.Md. 2004).  However, when the formation of an arbitration agreement is at issue,

courts treat the motion to compel arbitration as one for summary judgment. *Id*. fn 1.

(*citing* Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir.1980)).

*See also*, General Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No.

697 v. Premier Concrete Products, Inc., 81 F.3d 149 (4th Cir. 1996); Institut Pasteur

v. Chiron Corp., 315 F.Supp.2d 33, (D.D.C.,2004);  Boulet v. Bangor Securities Inc.,

324 F.Supp.2d 120, (D.Me.2004); Brown v. Dorsey & Whitney, LLP., 267 F.Supp.2d

61 (D.D.C. 2003); 9 U.S.C. § 4 (providing for a jury trial where the existence of an

agreement to arbitrate is in dispute). As the Longs deny the existence of an agreement

to arbitrate their disputes with ABIG, resolution of the present motion will be

determined under the summary judgment standard.

Rule 56 of the Federal Rules of Civil Procedure provides that summary

judgment will be granted when no genuine dispute of material fact exists and the

moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Haavistola v.

Comty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir.1993).  In deciding

whether there exists a genuine dispute of material fact, the court must "draw all

justifiable inferences in favor of the nonmoving party, including questions of

credibility and of the weight to be accorded to particular evidence." <u>Masson v. New</u> <u>Yorker Magazine</u>, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted).

As a corollary to the application of the summary judgment standard to the present motion, there is no presumption in favor of arbitrability when determining whether an agreement to arbitrate exists. "While there is a federal policy favoring the enforcement and broad interpretation of arbitration agreements, "parties cannot be forced to submit to arbitration if they have not agreed to do so."" <u>In re Startec Global</u> <u>Communications Corp</u>., 300 B.R. 244, 250 (D.Md. 2003) (*citing* <u>Chastain v. Robinson-</u> <u>Humphrey Co., Inc</u>., 957 F.2d 851, 854 (11th Cir.1992) (citation omitted)). *See also*, <u>Gregory v. Interstate/Johnson Lane Corp</u>., 188 F.3d 501, 1999 WL 674765, 5 (4th Cir. 1999) (unpublished) (same).[1]

The purpose of the FAA is to put arbitration agreements "upon the same footing as other contracts," not to raise them above other contracts. <u>Volt Information</u> <u>Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ</u>., 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (*quoting* <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)); <u>Prima Paint Corp. v.</u> <u>Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 404 n. 12 (1967). Thus, in ruling on a motion to compel arbitration, the Court views the alleged existence of an agreement to arbitrate just as it would view the challenged existence of other contract, and

---

[1] This Court is particularly mindful of the guidance given to it by the Court of Appeals on the precise issues presented in this case.

affords no presumption in favor of the existence of such an agreement. "Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997) (citation omitted).

## II.    *State Law*

"To determine whether the parties agreed to arbitrate, courts apply state law principles governing contract formation." Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001) (*citing* First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). *See also*, Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 685, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); 513 U.S. at 281, 115 S.Ct. 834; Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Hooters of America, Inc. v. Phillips, 39 F.Supp.2d 582, 610 (D.S.C. 1988) *affirmed* 173 F.3d 933 (4th Cir. 1999). While the FAA may preempt state law in certain circumstances, state law remains applicable if that law, whether legislative or judicial, arose to govern issues concerning the validity, revocability, and enforceability of all contracts generally. Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). *See also*, Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997) ("Courts decide whether there is an agreement to arbitrate according to common law principles of contract law.")

In the present case, the Subscription Agreement containing the Arbitration

8

Provision specifically states that "this agreement will be governed and construed in accordance with the laws of the State of South Carolina."  In addition, the underlying contract between the Longs and TLP was entered in South Carolina, and is between South Carolina residents. As such, South Carolina's law of contracts controls the issue of whether a binding arbitration agreement between ABIG and the Longs exists.  *See also*, Unisun Ins. Co. v. Hertz Rental Corp., 312 S.C. 549, 551-552, 436 S.E.2d 182, 184 (S.C.App. 1993) ("Unless the parties agree to a different rule, the validity and interpretation of a contract is ordinarily to be determined by the law of the state in which the contract was made.") (citation omitted).

### III.     *ABIG is Not Entitled to Enforce Arbitration.*

1.     ABIG is not a party to the Subscription Agreement.

In order to enforce a contract, a contract between the parties must first exist. As one South Carolina appellate court recently stated,    "In order to find Appellant breached a contract with [Defendant], a contract must first be found to exist.  A contract is an obligation which arises from *actual agreement of the parties* manifested by words, oral or written, or by conduct." Regions Bank v. Schmauch, 354 S.C. 648, 660, 582 S.E.2d 432, 439 (S.C. App. 2003) (emphasis added; citations omitted). The general rule in South Carolina is that "a party who is not in privity of contract with the contracting parties has no right to enforce a contract." Goode v. St. Stephen's United Methodist Church, 329 S.C. 433, 445, 494 S.E.2d 827, 833 (Ct. App. 1998).  See also, Trancik v. USAA Ins. Co., 354 S.C. 549, 553, 581 S.E.2d 858, 861 (Ct. App.

2003) ("In addition, under South Carolina law there is "a presumption that an individual who is not a party to a contract lacks privity to enforce it."")

Indisputably, ABIG is not a party to the Subscription Agreement between the Longs and Thaxton Life Partners, the issuer of the security. Mr. and Mrs. Long have not alleged that ABIG in any way breached the Subscription Agreement. ABIG is not mentioned in the arbitration clause, or anywhere else in the Subscription Agreement, and there is no indication from the document that the parties intended to create a direct benefit for ABIG in the arbitration agreement.

Mr. and Mrs. Long have filed affidavits stating that they were unaware of ABIG's involvement with TLP at the time that they entered into the subscription agreement, and that they did not intend to enter into an agreement with, or for the benefit of, ABIG.[2]  Furthermore, ABIG itself has taken the position in the Underlying Action that it had no contractual relationship with Mr. and Mrs. Long.  ABIG has stated:

> In the present case, plaintiffs' Complaint – on its face – fails to allege any contract between plaintiffs and ABIG; to the contrary, the only contract alleged is between the plaintiffs and the Thaxton Entities.  Indeed, plaintiffs' Subordinated Note and Subscriber Agreement – the contract which the plaintiffs seek to rescind – makes no mention of ABIG.[3]

As ABIG is not a party to the Subscription Agreement, there is a presumption that ABIG cannot enforce the terms of the agreement, including the arbitration provision.

---

[2]     As noted above, for purposes of the present motion, all disputed facts must be viewed in the light most favorable to the non-moving party, the Longs.

[3]     Defendant American Bankers Insurance Group, Inc.'s Memorandum of Law in Support of its Motion to Dismiss [the Underlying Action], p. 31-32 pending in Long v. Thaxton *et al*. *supra*.

2.    ABIG does not present the exceptional circumstances necessary to allow it to enforce an arbitration agreement to which it is not a party.

In certain rare instances, a nonsignatory to an arbitration agreement may nevertheless enforce an agreement to arbitrate.  "Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 417-18 (4th Cir. 2000).  In International Paper, the Court of Appeals identified five such common law principles which "could provide a basis 'for binding nonsignatories to arbitration agreements:  1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel.'" Id.  ABIG asserts that it is entitled to compel arbitration under either agency or alter-ego theory, as a third-party beneficiary to the agreement, or under the doctrine of estoppel.

a.    ABIG fails or refuses to allege an actual agency relationship with TLP.

In an effort to overcome the complete lack of privity between ABIG and the Longs, ABIG argues that the Longs claims against ABIG are subject to arbitration under principles of agency.  ABIG's argument fails as a matter of law, absent a determination that TLP was ABIG's agent (or vice versa), or that ABIG otherwise exercised control over TLP.

ABIG premises its 'agency' argument solely on allegations in the Longs' underlying state court action that TLP was ABIG's agent.  In the present action pending

11

before this court however, ABIG does not argue that TLP was its agent. On the contrary, ABIG has specifically denied (and continues to deny) this allegation. Rather, ABIG argues only that "the Longs have affirmatively alleged that TLP acted as ABIG's agent with respect to the sale of the Subordinated Notes." Petitioner's Memorandum, p. 8-9. Thus, ABIG argues that it is entitled to enforce the arbitration agreement based solely on the Longs' allegations in the underlying complaint, even though it denies such an agency relationship exists. However, such an argument amounts to impermissible 'boot-strapping,' and misstates the law.

A petition to compel arbitration is a separate and independent lawsuit. We Care Hair Dev., Inc. v. Engen, 180 F.3d 838, 841 (7th Cir.1999); Durham County v. Richards & Associates, Inc.,742 F.2d 811, 813 (4th Cir. 1984); Vulcan Chemical Technologies, Inc. v. Barker, 297 F.3d 332, 337 (4th Cir. 2002). Indeed this Court's jurisdiction depends on this action being independent of the underlying lawsuit, for if the underlying lawsuit were applicable, there would be not diversity jurisdiction upon which ABIG predicates this Court's jurisdiction. The FAA, in itself, provides no federal-question basis establishing federal jurisdiction. *See e.g.*, Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 439 (4th Cir. 1999).

As an independent action, the sufficiency of the petition must be adjudged solely by looking to the well-pleaded allegations contained therein. In this case, ABIG must allege sufficient facts that would entitle it to compel arbitration. ABIG alleges its entitlement to compel arbitration, *inter alia*, under an 'agency theory.' However, ABIG

12

fails to allege the most basic element of this theory-- that TLP was actually its agent.[4] As such, the Petition fails as a matter of law to state a claim for the requested relief. If ABIG wishes to compel arbitration under an 'agency theory,' it must allege, and thereby admit that TLP served as its agent.

Absent such an admission of agency, the cases cited by ABIG in support of its agency theory are clearly inapplicable under present circumstances. The cases cited by ABIG do not support the proposition that the allegations of agency from an underlying action confer a right to arbitration where the petitioner seeking to compel arbitration persists in denying the agency. For example, in Long v. Silver, 248 F.3d 309 (4th Cir. 2001), the Court of Appeals held that claims against the corporation's shareholders were properly subject to an arbitration agreement covering the corporation and the plaintiffs because all of the shareholders, as officers and directors of the corporation, "control all of the activities of the corporation." Id. at 320. Thus, the petitioners in that case did not deny their control over the corporation. Similarly, in Bolamos v. Globe Airport Security Services, Inc., the petitioner, a corporate parent, did not dispute that its wholly-owned subsidiary was its agent. 2002 WL 1839210 (S.D.Fla. 2002), aff'd, 64 Fed. Appx. 743, 2003 WL 1701694 (11th Cir. 2003). Additionally, while MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 948 (11th Cir. 1999), generally supports the proposition that agency theory may obviate the need for

---

[4] ABIG argues, albeit in a footnote, that it is alternatively entitled to compel arbitration under an "alter ego" theory. Setting aside the issue of whether a corporation can equitably pierce its own veil when it suits its purposes to do so, ABIG's 'alter ego' analysis similarly fails because they fail to allege that TLP was, in fact, its alter ego.

privity in certain situations, the <u>Franklin</u> court did not consider ABIG's arguments for compelling arbitration. ("[W]e need not determine whether MS Dealer could enforce arbitration under an agency theory…."). In short, the cases cited by ABIG are clearly distinguishable from the present matter.

This Court finds that a plaintiff's allegations in an underlying dispute do not provide a sufficient basis for establishing the right of a non-signatory to compel arbitration under 'agency theory' where the defendant persists in denying the agency relationship. The right to compel arbitration under an agency theory requires, as a prerequisite, that the agency relationship be established first, or at a minimum, at least alleged by the petitioner seeking to compel arbitration.

  b. <u>ABIG fails to demonstrate third-party beneficiary status</u>.

ABIG also asserts that it may enforce the arbitration agreement between TLP and the Longs because it alleges that it is a 'third-party beneficiary' of the agreement. However, ABIG fails to cite any South Carolina authority supporting its contention that it is a third-party beneficiary of the Subscription Agreement. ABIG has the burden of establishing its status as a third-party beneficiary under South Carolina law. *See* <u>Perry v. Thomas</u>, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (state law remains applicable if that law, whether legislative or judicial, arose to govern issues concerning the validity, revocability, and enforceability of all contracts generally). Under South Carolina law, ABIG does not qualify as a third-party beneficiary, and thus cannot compel arbitration on that basis.

The general rule in South Carolina is that "a party who is not in privity of contract with the contracting parties has no right to enforce a contract." Goode v. St. Stephen's United Methodist Church, 329 S.C. 433, 445, 494 S.E.2d 827, 833 (Ct. App. 1998). In South Carolina, an individual who is not a party to a contract presumptively lacks privity to enforce it. Trancik v. USAA Ins. Co., 354 S.C. 549, 553, 581 S.E.2d 858, 861 (Ct. App. 2003) (*citing* Touchberry v. City of Florence, 295 S.C. 47, 48-49, 367 S.E.2d 149, 150 (1988)). A stranger to a contract between two other parties cannot recover upon it, unless the contract was expressly made for his benefit, and there is an obligation or duty from the promises to him that supplied a consideration of the contract. Mack Mfg. Co. v. Massachusetts Bonding & Ins. Co., 103 S.C. 55, 87 S.E. 439, 440 (1915).

A party who is not in privity may only claim rights as the third party beneficiary of a contract if that person can prove that "the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person." Goode v. St. Stephen's United Methodist Church, *supra*.; Bob Hammond Constr. Co. v. Banks Constr. Co., 312 S.C. 422, 424, 440 S.E.2d 890, 891 (Ct.App.1994) ("The mere fact that [plaintiff] might ultimately and indirectly benefit from the contract between the [signatories] is not sufficient."). *Accord*, Arrants v. Buck, 130 F.3d 636, 641 (4th Cir. 1997) (holding that the agreement between the signatories must "express a clear intent to benefit" the third-party). To enforce the contract as a third-party beneficiary, ABIG must prove that *both* the Longs *and* TLP intended to enter into the

15

arbitration agreement for the express and direct benefit of ABIG, such that the benefit to ABIG was part of the exchange of consideration.  ABIG has not and cannot meet this burden.

To determine the intent of the parties to a contract, one must first look to the language of the contract.  C.A.N. Enterprises, Inc. v. South Carolina Health and Human Services Finance Com'n, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988).  By the express terms of the Subscription Agreement and the arbitration provision contained therein, ABIG is neither a party to the agreement, nor an intended beneficiary.  ABIG is not mentioned in the arbitration clause, or in the Subscription Agreement, and there is no indication from the document that the parties intended to confer a direct benefit upon ABIG in the arbitration agreement, such that any alleged benefit to ABIG formed part of the consideration for the agreement.

Evidence of the parties' intention as to the binding effect of the Contract is also found in Paragraph 2 of the Subscription Agreement, which states:

> Each Subscriber and the Company understands and agrees that (a) this Agreement is binding upon and will inure to the benefit of the parties hereto and their successors/heirs and permitted assigns.

Subscription Agreement, ¶ 2.

ABIG does not argue that it is a successor in interest, or a "permitted assignee" of TLP. Furthermore, this paragraph identifies the "parties" to the agreement as "the Subscribers," Mr. and Mrs. Long, and "the Company," Thaxton Life Partners.

Therefore, taken in the context of the agreement as a whole, the term "party" as used in the arbitration provision found in paragraph 6 of the agreement does not include ABIG as "a party" who is entitled to compel arbitration.

"When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense." C.A.N. Enterprises, Inc. v. South Carolina Health and Human Services Finance Com'n, 296 S.C. 373, 377-378, 373 S.E.2d 584, 586 (S.C. 1988). "A contract is read as a whole document so that one may not, by pointing out a single sentence or clause, create an ambiguity." Southern Atlantic Financial Services, Inc. v. Middleton, 356 S.C. 444, 447, 590 S.E.2d 27, 29 (S.C. 2003) (internal quotations omitted). Thus, consistent with the use of the term "party" throughout the Subscription Agreement, the phrase "any party" as used in the arbitration provision refers solely to TLP and the Longs.

Furthermore, the Confidential Private Placement Memorandum referred to in the Subscription Agreement only identifies ABIG as the issuer of the policies sold by TLP as part of TLP's automobile insurance business. It does not describe ABIG's involvement in TLP's operations as alleged by Mr. and Mrs. Long in their complaint (the Longs essentially allege that ABIG had control over TLP, caused the notes to be sold, and diverted those proceeds to cover its 'senior' debt). Nor does the Confidential Private Placement Memorandum indicate that ABIG was in any way involved in the sale of the securities at issue in the Longs underlying suit. There is no evidence in the

17

Subscription Agreement that ABIG's involvement in TLP was anything more than an arm's-length transaction between two independent business entities.  Therefore, it cannot be reasonably concluded that the Longs intended to make ABIG the third party beneficiary of the arbitration clause in the Subscription Agreement.

To the extent that any benefit whatsoever inured to the benefit of ABIG, such a benefit was not intended by *both* of the parties to the contract, and thus was, at best, incidental.  It is well established under South Carolina law that one cannot claim rights as a third party beneficiary to a contract which merely creates an "incidental" or "consequential" benefit.  Cothran v. Rock Hill, 211 S.C. 17, 43 S.E.2d 615, 616 (1947).  At best, the benefit that ultimately inured to ABIG was unintended, incidental, and consequential.

The Fourth Circuit Court of Appeals has applied South Carolina law to deny arbitration of a dispute in analogous circumstances.  In R.J. Griffin Company v. Beach Club II Homeowners Association Incorporated, 384 F.3d 157 (4th Cir. 2004), the Court found that a general contractor who had been sued by a homeowners association could not compel arbitration by relying on an arbitration clause that was contained in a master deed to a condominium complex.  The Fourth Circuit found that the master deed applied to disputes between the developer – who was a party to the deed -- and the homeowners, but not to disputes with the general contractor.  The Fourth Circuit rejected the argument that language covering "any dispute arising out of the use, ownership, or occupancy of the element" could serve to compel arbitration with the

18

general contractor.  The Court explained:

> The first arbitration category does appear to cover "common elements" disputes that might not involve Drake *[the Developer]*, for example, a dispute between unit owners. *That does not mean, however, that the parties to the master deed intended to extend the benefit of arbitration to any third party who is not bound by the deed*. We "cannot [read words] into a contract which impart intent wholly unexpressed when the contract was executed. *[citations omitted]*.

R.J. Griffin Company v. Beach Club II Homeowners Association Incorporated, 384 F.3d at 165 (*emphasis added*).

Even if the term "any party" as used in the Arbitration Provision was not clear and unambiguous when the contract is viewed as a whole, ABIG would still not be entitled to compel arbitration on this basis.  "Where [the terms of a contract] are ambiguous, the question of the parties' intent should be submitted to the jury." Black v. Freeman,  274 S.C. 272, 273, 262 S.E.2d 879, 880 (1980) *citing* Garrett v. Pilot Life Ins. Co., 241 S.C. 299, 128 S.E.2d 171 (1962).  The uncontroverted affidavits of the Longs state unequivocally that they never intended ABIG to benefit in any way from the Arbitration Provision.  Absent any evidence to the contrary, there is no indication, either within the Subscription Agreement or without, that ABIG was an intended third-party beneficiary of the Subscription Agreement, including the arbitration provision contained therein.  As such, ABIG is not entitled to compel arbitration on this basis.

19

c.     ABIG fails to demonstrate that the Longs are equitably estopped from opposing arbitration of their claims against the Company.

ABIG finally argues that it is entitled to compel arbitration under the theory of equitable estoppel.  ABIG mistakenly argues that the Longs are equitably estopped from denying the applicability of the arbitration clause based on the Longs' allegations in the underlying complaint.  ABIG contends that the Longs are either relying on the terms of the Subscription Agreement to assert their claims against ABIG, or are bringing claims that are "substantially interdependent" with the terms of the Subscription Agreement.  Both arguments misapprehend the nature of Mr. and Mrs. Long's claims against ABIG.  The Longs are not trying to hold ABIG liable under the terms of the Subscription Agreement; instead, they assert independent claims based on ABIG's silent participation in TLP's note sales program.

The Fourth Circuit has explained the rationale for the doctrine of equitable estoppel as follows:

> In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.

International Paper Company v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d at 419.

In the present case, Mr. and Mrs. Long are not trying to enforce any provisions of the Subscription Agreement or of the Note against ABIG, and do not assert a cause of action for breach of contract.  Instead, their allegations are based in non-contractual

common law and statutory theories of liability, and therefore are not subject to arbitration under the doctrine of equitable estoppel.[5]  R.J. Griffin Company v. Beach Club II Homeowners Ass'n, Inc., *supra*.

ABIG contends, however, that the Longs' causes of action in the underlying complaint are 'inextricably intertwined' with the terms of the Subscription Agreement, such that it may nevertheless compel arbitration.   However, as in R.J. Griffen Company, Mr. and Mrs. Long's claims are not so "inextricably intertwined" with the Subscription Agreement as to equitably estop them from denying application of the arbitration clause.  As noted above, they are based on common law and statutory provisions, not on breach of the Subscription Agreement.

Furthermore, ABIG's argument that the Longs' claims in the underlying action are "inextricably intertwined" with the Subscription Agreement misconstrues the doctrine itself.  The Fourth Circuit has applied the "inextricably intertwined" doctrine analysis under limited circumstances where a non-signatory parent corporation sought to compel arbitration of claims against it which were "inextricably intertwined" with claims brought against its subsidiary corporation, which was a signatory to a contract containing an arbitration provision.  J.J. Ryan and Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315 (4th Cir. 1988).  "However, outside the parent-subsidiary

---

[5] ABIG argues that the Longs' claim for "rescission" is a contract claim, since rescission is typically a contract remedy. However, as ABIG itself notes in its Reply Memorandum, the Longs 'rescission' claim does not assert that ABIG breached the Subscription Agreement, but rather argues that "ABI[G], as the recipient of the money, should refund the money to each of the Plaintiffs." Reply Memorandum, p. 10 (quoting the Longs' Underlying Complaint at ¶ 110).  This cause of action, whatever its title, is premised in equity, not upon an alleged breach of contract.

relationship, the Fourth Circuit has expressly declined to rule upon whether a non-signatory may be bound to arbitrate when claims are "inherently inseparable" from the remainder of the contract." Coots v. Wachovia Securities, Inc., 304 F.Supp.2d 694, 700 (D.Md. 2003) (*citing* Int'l Paper, 206 F.3d at 418 n. 6).  Not only are the Longs' claims not founded upon the Subscription Agreement, but ABIG does not share the close legal relationship (of parent and subsidiary corporations) found to be crucial in J.J. Ryan.  ABIG's reliance on this case is therefore misplaced.

ABIG's reliance on Long v Silver, 248 F.3d 309 (4th Cir. 2001), is similarly misplaced.  In Long, the plaintiff, a shareholder in a corporation, brought suit against the corporation, its officers and directors, and other shareholders.  The Court of Appeals found that an arbitration agreement between the plaintiff and the corporation was sufficient to bind the plaintiff to arbitrate his disputes with the other shareholders.  Citing J.J. Ryan, the Court found the situation analogous to a parent-subsidiary relationship, because "the shareholders are all officers and members of the Board of Directors and, as the only shareholders, control all of the activities of the corporation." Long, at 320.  In the present case, ABIG and TLP do not share the same close legal relationship.

Instead, ABIG attempts to turn the doctrine of equitable estoppel on its head. ABIG denies any liability arising from Thaxton Life Partners' sale of notes; it denies any agency relationship with Thaxton Life Partners; it denies any control over Thaxton Life Partners; or anything other than an arm's length business relationship with the

22

company.  Yet, at the same time, ABIG seeks to enforce the arbitration clause in TLP's agreement by pointing to the very allegations of agency, alter ego, and participation that it denies in the Underlying Action, and continues to deny in this Court.

Under these circumstances, it is ABIG that is equitably estopped from denying its relationship with Thaxton Life Partners while it tries to enforce the arbitration clause in TLP's contracts. International Paper Company v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d at 417-418 ("Equitable estoppel precludes a party from asserting rights 'he otherwise would have had against another' when his own conduct renders assertion of those rights contrary to equity.").  However, a "[t]hird party who elects to avail herself of contract entered into between others for her benefit makes the contract her own and must bear the burden as well as reap the benefits that properly belong to her as party to the contract, and her rights depend upon and are measured by terms thereof."  Kingman v. Nationwide Mut. Ins. Co., 134 S.E.2d 217 (S.C. 1964).

At the hearing on this matter, counsel for Mr. and Mrs. Long stated that they would not oppose arbitration of the Longs' dispute with ABIG if ABIG would admit to an agency or alter-ego relationship with TLP.  ABIG has, thus far, refused to do so.  This Court finds it inconsistent with principles of equity to allow ABIG to avail itself of the perceived benefits of TLP's arbitration clause, to which it is not a party, while also permitting ABIG to deny its relationship to TLP.  The doctrine of equitable estoppel, as its name suggests, is unquestionably an equitable remedy.  One who seeks equity must first do equity.  Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery

23

Co., 324 U.S. 806, 814, 65 S.Ct. 993, 997 (1945) ("he who comes into equity must come with clean hands.").  On balancing the equities, this Court finds that Plaintiff ABIG cannot establish an agreement to arbitrate the Longs' underlying claims where it seeks simultaneously to reserve the defense that no contractual relationship exists, particularly where the Longs' claims in the underlying action are not premised on the contract containing the arbitration agreement.

This Court's primary task in the present proceeding is to satisfy itself that an agreement to arbitrate exists between the parties.  Since the Longs' claims against ABIG are not premised upon a breach of the Subscription Agreement, and because ABIG is not otherwise entitled to enforce the arbitration clause contained in the Subscription Agreement, ABIG is not entitled to compel arbitration under the doctrine of equitable estoppel.

## CONCLUSION

ABIG, as the Petitioner / Plaintiff and Movant in the present action, having failed to meet its burden and satisfy this Court that a valid and enforceable agreement to arbitrate exists between the parties, is not otherwise entitled to compel arbitration.  Therefore, the Court denies the Plaintiff's motion to compel arbitration.

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

Anderson, South Carolina

June 8, 2005

24